**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Hazel Corbin,<br><br>              Plaintiff,<br>vs.<br><br>Arizona City Fire District, et al.,<br><br>              Defendants. | No.  CV-19-05716-PHX-SPL<br><br>**ORDER** |

**I.    BACKGROUND**

Plaintiff is employed by Defendant Arizona City Fire District ("ACFD") in a clerical position managing payroll, distributing paychecks, processing time sheets, and ensuring bills are paid and benefits are processed. (Doc. 1 at ¶¶ 1, 9). Plaintiff alleges Defendant Jeff Heaton, an employee of ACFD and Plaintiff's supervisor, failed to record Plaintiff's hours worked from 7:00am to 9:00am on the first Monday of each pay period. (Doc. 1 at ¶ 14). Plaintiff further asserts Defendants improperly classified her as an exempt employee and failed to pay her overtime. (Doc. 1 at ¶ 18, 25). Plaintiff also alleges Defendant Heaton reduced her schedule after she complained about the time-keeping errors. (Doc. 1 at ¶ 34-35).

On December 2, 2019, Plaintiff filed a complaint in this Court alleging violation of the overtime provisions of the Fair Labor Standards Act ("FLSA"); retaliation under the FLSA and Arizona Revised Statute ("A.R.S.") §§ 23-364(B), (E), and (G) (hereinafter the Arizona Minimum Wage Act, or "AMWA"); failure to pay wages; and violation of A.R.S.

§ 38-431.01 (Arizona's "Open Meeting Law"). (Doc. 1 at 8-13). Before the Court is Defendants' Motion for Summary Judgment (Doc. 64).

## II.   LEGAL STANDARD

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is "material" when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact arises if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, and affidavits, which it believes demonstrate the absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. The burden then shifts to the party opposing summary judgment, who "must make a showing sufficient to establish a genuine dispute of material fact regarding the existence of the essential elements of his case that he must prove at trial." *Gorman v. Wolpoff & Abramson, LLP,* 584 F.3d 1147, 1153 (9th Cir. 2009) (citation omitted); *see also Celotex*, 477 U.S. at 322-23 ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."). The party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Matsushita Elec. Indus.*

*Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

**III.   DISCUSSION**

Defendants argue summary judgment is proper for five reasons: (1) Plaintiff's Open Meeting Law claim fails because Defendant Heatonmade the decision to reduce her hours outside a District Board meeting; (2) Plaintiff did not engage in protected activity under the FLSA or AMWA but, even if she did, Plaintiff did not put Defendants on notice that she was engaging in protected activity; (3) Defendant had a legitimate, not retaliatory reasons for reducing Plaintiff's hours, which Plaintiff cannot refute; (4) Defendants have already addressed and resolved Plaintiff's wage claims; and (5) Defendants are not subject to punitive damages under A.R.S. § 12-820.04. (Doc. 64 at 1).

**a.  Open Meeting Law (Count IV)**

Under A.R.S. § 38-431.01(A), "[a]ll meetings of any public body shall be public meetings and all persons so desiring shall be permitted to attend and listen to the deliberations and proceedings." However, under A.R.S. § 38-431.03(A)(1), the Board may hold an executive session to discuss employment issues, but affected employee "may demand that the discussion . . . occur at a public meeting," and the "public body shall provide" the affected employee "written notice of the executive session."

Plaintiff alleges Defendants violated the Open Meeting Law by discussing the reduction of her hours during a Board meeting without providing her the required notice. (Doc. 1 at 13-15). Defendants assert they are entitled to summary judgment on the Open Meeting Laws claim because the decision to reduce Plaintiff's hours was made by Chief Heaton alone, and not at a Board meeting. (Doc. 64 at 5). Specifically, Defendants allege "Chief Heaton did not seek approval from the Board before reducing [Plaintiff]'s hours, nor was [Plaintiff]'s employment discussed in a Board meeting absent proper notice under Arizona's Open Meeting Laws." (Doc. 64 at 5). Defendants cite a deposition with Board Chairman Tim McCain in which McCain states Chief Heaton only told him about the decision to reduce Plaintiff's hours after he did so, and that the Board did not vote on that decision, nor would they have. (Doc. 64 at 5-6).

3

In Chief Heaton's sworn deposition, when asked whether he ever discussed the decision to reduce Plaintiff's hours with the Board, Heaton stated "No. . . . We don't talk about personnel issues with the board." (Doc. 67-1 at 162). When asked whether he had ever discussed Plaintiff's performance with the Board, he stated "No. . . . [H]as her performance ever been presented to the board? I would never do that. They're not responsible for personnel. That's my job." (Doc. 67-1 at 164).

Plaintiff asserts that Heaton "contradicted himself in earlier correspondence" and point specifically to "one of the first communications with Ms. Corbin's counsel" wherein Heaton "indicated that he made the decision with the Board to reduce Ms. Corbin's hours." (Doc. 66 at 6). However, Plaintiff only cites to defense counsel's settlement letter for support of this proposition. *See* Doc. 67 at ¶ 43) (citing Defendant's Exhibits 14 & 15). In a previous letter, Plaintiff's counsel asserted: "When [Plaintiff] confronted Heaton, he first stated the reduction in hours was the Board's decision. In August, when [Plaintiff] pressed Heaton, he admitted it was his decision to cut her hours." (Doc. 67-14 at 3). In response, Defendants' counsel stated that "the Board and Chief Heaton determined that it was necessary to reduce [Plaintiff]'s hours to offset the addition [sic] expenditures caused by her performance issues." (Doc. 67-15 at 4).

Even if Defendants did concede to the Board's involvement in this letter, "arguments and statements of counsel 'are not evidence and do not create issues of material fact capable of defeating an otherwise valid motion for summary judgment.'" *Barcamerica Int'l USA Tr. v. Tyfield Importers, Inc.*, 289 F.3d 589, 593 n.4 (9th Cir. 2002) (citing *Smith v. Mack Trucks*, 505 F.2d 1248, 1249 (9th Cir. 1974) (per curiam) ("Statements of counsel, whether in legal memoranda or elsewhere, are not evidence and may not be relied on to either support or defeat a motion for summary judgment.")). Without more, this Court cannot conclude there exists a material issue of fact as to Plaintiff's Open Meeting Law claim. The evidence provided supports that Heaton reduced Plaintiff's hours outside a Board meeting, do Defendants are entitled to judgment as a matter of law on the Open Meeting Law claim.

**b. Retaliation (Counts II & IV)**[1]

To establish a prima facie case of retaliation under the FLSA, a plaintiff "must show (1) [s]he engaged in activity protected by the FLSA; (2) the defendant took an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action." *See, e.g.*, *Ader v. SimonMed Imaging Inc.*, 465 F. Supp. 3d 953, 975 (D. Ariz. 2020). "Like FLSA, AMWA's retaliation provision prohibits employers from taking retaliatory actions against employees." *Tolano v. El Rio Bakery*, No. CV-18-00125-TUC-RM, 2019 WL 6464748, at *5 (D. Ariz. Dec. 2, 2019) (internal citations omitted). Here, it is not disputed that Plaintiff suffered an adverse employment action: the reduction of her hours. The parties only dispute whether Plaintiff engaged in protected activity, and whether there exists a causal connection between the activity and the hours reduction.

*1. FLSA Retaliation*

Under the FLSA, an employee engages in protected activity when she "has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding." 29 U.S.C. § 215(a)(3). Further, under the FLSA "the employer must have fair notice that an employee is making a complaint that could subject the employer to a later claim of retaliation." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 13 (2011).

Defendants argue Plaintiff did not engage in protected activity because she never notified the District, the Board, or Chief Heaton that she was making a complaint under the FLSA. (Doc. 64 at 7-8). In response, Plaintiff argues she "testified at length regarding her detailed reports of FLSA violations to Heaton." (Doc. 66 at 8). Plaintiff cites deposition testimony in which Plaintiff states that her hours were reduced in "retaliation because of me asking him about why hours were crossed out on the document." (Doc. 67 at ¶ 125). Plaintiff further cites to "befriending individual employees who brought claims against Heaton" and a note she wrote on a time sheet stating "the time clock always shorts me 2

---

[1] Plaintiff erroneously labeled her retaliation claim under Arizona law as Count IV, along with the Open Meeting Law claim.

hr. for the 1st Monday of the new pay period." (Doc. 66 at 8). Plaintiff also argues she "complained about the same issue in Heaton's office, and that he slammed his file cabinet shut in an act of apparent intimidation." (Doc. 66 at 8).

"[N]ot all amorphous expressions of discontent related to wages and hours constitute complaints filed within the meaning of [the FLSA]." *Lambert v. Ackerley*, 180 F.3d 997, 1007 (9th Cir. 1999) (finding that plaintiffs put defendant on notice of her claims because they "not only complained orally to their employers about the failure to pay adequate overtime wages, and specifically alleged a violation of the FLSA, they also contacted the Department of Labor (which informed them that their employer's practices were illegal), hired an attorney to assist them with their claim, and notified their employer in writing of the specific FLSA violation they were alleging."). "[N]ot all abstract grumblings will suffice to constitute the filing of a complaint with one's employer," and "'[t]here is a point at which an employee's concerns and comments are too generalized and informal to constitute 'complaints' that are 'filed' with an employer within the meaning of the [statute].'" *Valerio v. Putnam Assocs. Inc*., 173 F.3d 35, 44 (1st Cir. 1999) (internal citations omitted). "[A]ffording protection to employees who lodge *purely intracorporate complaints* unhelpfully leaves employers in the dark as to what types of assertions will rise to the level of protected activity by their employees." *Id.* at 44 (emphasis added) (internal quotations and citations omitted).

Plaintiff's association with another employee who filed formal complaints, as well as her casual remarks about the time-keeping process to Chief Heaton, are insufficient as a matter of law to put Defendants on notice of her FLSA claims. According to Plaintiff's testimony, Plaintiff "complained" to Defendants by asking why her hours were crossed out on a timesheet, befriending another employee who filed a complaint, and asking Defendant Heaton again why her hours were crossed out. Pursuant to the caselaw cited above, these informal complaints are insufficient as a matter of law to constitute "complaints" under the FLSA. Because Plaintiff fails to show she sufficiently put Defendants on notice of her protected activity, she fails to make out a prima facie case of retaliation under the FLSA.

*See, e.g.*, *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011) ("To fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection."). This Court therefore need not address the causal link or Defendants' legitimate, nondiscriminatory reasons for the reduction in Plaintiff's hours. Plaintiff's FLSA retaliation claims fail.

### 2. AWLA Retaliation

Arizona's retaliation requirements are not as stringent as the FLSA's. Under the AMWA, "[a]n employee engages in a protected activity when she participates in conduct that *reasonably could be perceived* as *directed toward* the assertion of rights protected by the statute." *Davenport v. SP Jedi Inc.*, No. CV-18-02580-PHX-SMM, 2020 WL 1271380, at *6 (D. Ariz. Jan. 16, 2020) (emphasis added). Further, "[t]aking adverse action against a person within ninety days of a person's engaging in the foregoing activities shall raise a presumption that such action was retaliation." A.R.S. § 23-364(B).

In *Davenport*, the plaintiff did "not outright state she engaged in protected activity" but instead asserted that the defendants terminated her after "complaining to Defendants, through email and text message, about Defendants' failure to properly compensate Plaintiff and their failure to pay for Plaintiff's medical insurance after deducting payments from her paycheck." *Davenport*, 2020 WL 1271380, at *7. The court denied summary judgment because "the close proximity between Plaintiff's complaints and her termination is sufficient to raise a rebuttable presumption that Plaintiff's termination was in retaliation for her complaints." Here, Plaintiff alleges that "[o]n or about July 19, 2019, Plaintiff complained that she was not being paid wages for all hours worked" and that "on July 22, 2019, the District reduced Plaintiff's hours from 80 per two-week period to 16 in retaliation against her for complaining about unpaid wages." (Doc. 1 at ¶¶ 72-73). Although Plaintiff did not make formal complaints, her informal complaints were similar to those in *Davenport* and the close proximity to her reduction in hours raises a rebuttable presumption that Defendants retaliated against her. Plaintiff therefore has made out a sufficient prima

7

facie case of retaliation under Arizona law.

Under the AWLA, even where a defendant has taken "adverse action against a person within ninety days of a person's engaging in" protected activity such that a presumption of retaliation is raised, that presumption "may be rebutted by clear and convincing evidence that such action was taken for other permissible reasons." A.R.S. § 23-364(B).  Here, Defendants argue they had legitimate, non-discriminatory reasons for reducing Plaintiff's hours. Specifically, Defendants assert that Plaintiff "repeatedly submitted inaccurate and inconsistent financial data and records to the Board" and "used flawed methodology to track the District's finances, as confirmed by an outside accountant." (Doc. 64 at 10). Defendants argue "Chief Heaton reduced [Plaintiff]'s hours because of financial concerns with the District and deficiencies in [Plaintiff]'s performance." (Doc. 64 at 9).

Defendants have provided sufficient clear and convincing evidence that they reduced Plaintiff's hours for legitimate non-discriminatory reasons. In *Hoeveler*, for example, the defendant met its burden where it offered "emails, contemporaneous documents and deposition testimony" that the plaintiff was discharged for permissible reasons, "including (1) the complaint about her treatment of employees, and (2) her failure to respond for nearly two weeks to ADG's proposed reassignment at the same salary." *Hoeveler v. Arizona Assocs. in Dermatology & Cosm. Surgery LLC*, No. 1 CA-CV 20-0120, 2021 WL 56402, at *3 (Ariz. Ct. App. Jan. 7, 2021). Here, Defendants cite errors in Plaintiff's financial recordkeeping, and provide a memo detailing Plaintiff's failure to "accurately document the District's profit and loss statement, which resulted in a shortfall of more than $150,000." (Doc. 65 at ¶23); (Doc. 65-1 at 262 (Exhibit 9)). Defendants also cite to "significant inconsistencies in the District's financial records." (Doc. 65 at ¶ 24). Defendants further cite other performance issues, and provide emails illustrating that Plaintiff  "made several mistakes in submitting payments to vendors." (Doc. 65 at ¶ 26); (Doc. 65-1 at 292-295 (Exhibits 14 & 15)). Defendants cite other performance issues with corresponding emails and memos as support, including issues with Plaintiff's scheduling,

aggression with co-workers, and opening Chief Heaton's personal mail without permission. (Doc. 65 at 5-7). The Court finds these non-discriminatory reasons to be legitimate and sufficiently supported by clear and convincing evidence in the record. Accordingly, Defendants have rebutted the presumption that they reduced Plaintiff's hours for discriminatory reasons.

Plaintiff has not created an issue of fact on Defendants' non-discriminatory reasons. Plaintiff alleges that Defendants' proffered reasons are "nonsensical, shifting, and contradictory." (Doc. 66 at 9). Plaintiff cites specifically to the financial reasons for reducing Plaintiff's hours, as well as Plaintiff "using the cash basis instead of accrual basis." (Doc. 66 at 9-10). However, Defendants provided *other* independently sufficient reasons for reducing her hours, including that she "repeatedly submitted inaccurate and inconsistent financial data and records to the Board," as discussed above. (Doc. 64 at 10). As this Court has already held, those reasons are supported by the record, and Plaintiff points to no contrary evidence to refute them. In sum, Defendants have offered clear and convincing evidence of legitimate reasons for reducing Plaintiff's hours, and Plaintiff has not created a genuine issue of fact as to Defendants' proffered non-discriminatory reasons. Plaintiff's AMWA retaliation claim therefore fails.

### c. Wage Claims (Counts I & III)

Defendants argue Plaintiff's wage claims, Counts I and III, "are moot because the parties already resolved these claims." (Doc. 64 at 11). Defendants argue that Plaintiff sent a demand letter to the District stating that she is entitled to unpaid wages and overtime, and that, "on the advice of the District's attorney, Chief Heaton directed Corbin to pay herself $1,382.53 in uncompensated overtime and an additional $1,480.00 to cover all applicable fees and penalties." (Doc. 64 at 12). Plaintiff argues that the amount of unpaid wages she personally calculated is "over twice the amount paid by Defendants" and that "[t]he number of hours Plaintiff worked and was not paid for is a disputed fact that should go before the jury." (Doc. 66 at 12). Defendants argue Plaintiff has not proven, or even attempted to prove, that the calculation of the amount paid was in error. (Doc. 64 at 12). Defendants

also argue that Plaintiff "has not created a question of fact on whether she actually performed uncompensated work" because, while "the District produced all timekeeping and payroll records that it relied upon to calculate [Plaintiff]'s unpaid wages in the amount of $2,862, [Plaintiff] has not identified any additional uncompensated hours from these records." (Doc. 68 at 8).

When asked how much Plaintiff believed she was not paid in wages, Plaintiff answered that she did not have that number. (Doc. 67-3 at 150-51). When asked whether she had done a calculation to deduct the settlement amount she was paid by Defendants from what she is claiming, Plaintiff answered that she had "done about ten different spreadsheets on all of this" but, when asked if she knew what the number was, she again answered: "No. Not off the top of my head." (Doc. 66-3 at 221).

An employee who brings an action for unpaid wages under the FLSA has the burden of proving that she performed the work for which he was not properly compensated. *See, e.g.*, *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946) (superseded by statute on other grounds) ("An employee who brings suit under s 16(b) of the Act for unpaid minimum wages or unpaid overtime compensation, together with liquidated damages, has the burden of proving that he performed work for which he was not properly compensated."); *Finton v. Cleveland Indians Baseball Co. LLC*, No. CV-19-02319-PHX-MTL, 2021 WL 661975, at *5 (D. Ariz. Feb. 19, 2021) (same). Under the *Mt. Clemens* burden-shifting framework, the employee must first "prove[] that [s]he in has in fact performed work for which [s]he was improperly compensated" and "produce[] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Mt. Clemens*, 328 U.S. at 687-88. Even where the employer fails to keep adequate records of the employee's hours, the employee must still "prove that [s]he has in fact performed work for which [s]he is owed overtime, and (2) produce 'sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" *Ader v. SimonMed Imaging Inc.*, 465 F. Supp. 3d 953, 964 (D. Ariz. 2020) (quoting *Mt. Clemens*, 328 U.S. at 687).

Here, Defendants hired outside counsel to analyze Plaintiff's timesheets and discovered approximately $1,382.53 in unpaid wages. (Doc. 65-1 at 371-75 (Defendants' Exhibit 34)). The only evidence that Plaintiff provides of her overtime hours worked (beyond those already compensated for by Defendants), is a spreadsheet she herself prepared tracking her hours. (Doc. 67-7 (Plaintiff's Exhibit 7)). This is not sufficient to create a genuine issue of material fact. *See, e.g.*, *FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts *and any supporting evidence*, is insufficient to create a genuine issue of material fact.") (emphasis added). Accordingly, there remains no issue of material fact on Plaintiff's remaining unpaid wages claims.

### d. Punitive Damages

Under A.R.S. § 12-820.04, "[n]either a public entity nor a public employee acting within the scope of his employment is liable for punitive or exemplary damages." Plaintiff argues that Defendant ACFD is not a public entity and that, even if it was, the Court "should not extend total immunity over Heaton" because "none of his job duties include intimidation or retaliation." (Doc. 66 at 13). Thus, Plaintiff argues "Heaton exceeded the scope of his job duties by, for example, spying on Plaintiff outside of her normal work hours, intimidate her and other employees and threaten them with termination should they talk to individuals who are no longer ACFD employees, and basing his decision to reduce hours partially on an individual who is not an ACFD employee." (Doc. 66 at 13).

Plaintiff first argues that Defendants have not proven ACFD is a public entity because "Defendants have not argued that a money judgment against them would be paid out of state funds." (Doc. 66 at 13). However, that test applies when determining whether a municipality is subject to sovereign immunity under the Eleventh Amendment and is not applicable here. *See, e.g.*, *Wisniewski v. Town of Columbus*, 2009 WL 10701744, at *3-4 (D. Mont. Nov. 18, 2009). Defendant ACFD, a city fire district, is a public entity, and Defendant Heaton is a public employee. *See, e.g.*, *Anderson v. Peninsula Fire Dist.*, No. 2:13-CV-01736-TLN, 2014 WL 1400950, at *1 (E.D. Cal. Apr. 10, 2014) ("Defendant Fire

11

District is a public entity, and the individual defendants are all public employees."); *Hygiene Fire Prot. Dist. v. Bd. of Cty. Comm'rs of Cty. of Boulder*, 205 P.3d 487, 489 (Colo. App. 2008) (finding that fire district is a public entity); *Stevens Constr. & Design, L.L.C. v. St. Tammany Fire Prot. Dist. No. 1*, 2019-0955 (La. App. 1 Cir. 7/8/20) (same). Plaintiff's arguments to the contrary are unavailing. Defendant ACFD is a public entity, and Defendant Heaton is a public employee.

Further, Defendant Chief Heaton was acting within the scope of his employment when he reduced Plaintiff's hours. The action that the Court must consider for the scope-of-employment analysis is the reduction of Plaintiff's hours, *i.e.* Chief Heaton's allegedly retaliatory action. "In Arizona, [t]he conduct of a servant is within the scope of employment if it is of the kind the employee is employed to perform, it occurs substantially within the authorized time and space limit, and it is actuated at least in part by a purpose to serve the master." *Smith v. Am. Exp. Travel Related Servs. Co.*, 876 P.2d 1166, 1170 (Ariz. App. 1994) (internal quotation marks omitted). "[A]n employee is acting within the scope of his employment while he is doing any reasonable thing which his employment expressly or impliedly authorizes him to do or which may reasonably be said to have been contemplated by that employment as necessarily or probably incidental to the employment." *Ray Korte Chevrolet v. Simmons*, 571 P.2d 699, 704 (Ariz. App. 1977). Defendant Chief Heaton was clearly acting within the scope of his employment when he reduced Plaintiff's hours. As describe above, he cited several legitimate reasons for reducing Plaintiff's hours—all of which were motivated by serving the ACFD. Plaintiff even admits to this in her Complaint. (Doc. 1 at ¶ 3) ("Moreover, in all these capacities, including the decisions made regarding Plaintiff's wages and employment, Heaton was acting directly or indirectly in the interest of ACFD."). Plaintiff's punitive damages claim is therefore barred by Arizona law.

### IV.   CONCLUSION

For the foregoing reasons, Plaintiff fails to identify a genuine issue of material fact as to any of her claims. Accordingly,

///

1   **IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. 64) is
2   **granted**. The Clerk of Court shall enter judgment accordingly and terminate this case.
3   Dated this 27th day of April, 2021.

                                                                Honorable Steven P. Logan
                                                                United States District Judge